1  KENNETH M. GARDNER
2  3175 N. Price Rd. #2266
   Chandler, AZ 85224
3  Telephone: (858) 722-1982

4  Plaintiff proceeding Pro Se

FILED _____ LODGED
RECEIVED _____ COPY

APR 19 2012

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ P DEPUTY

5

6

7

8

9

10

11

12

13

14

15

16                UNITED STATES DISTRICT COURT

17                    DISTRICT OF ARIZONA

18                     PHOENIX DIVISION

19

20

21  KENNETH MARTIN GARDNER, an          )   Case No.   CV-12-816-PHX-SPL
22  individual resident of Chandler, Arizona and  )
    former employee of defendants,      )
23                                       )   **COMPLAINT FOR:**
                                         )
24                          Plaintiff,   )       1.  **HARASSMENT;**
             -against-                   )       2.  **DISCRIMINATION.**
25                                       )
    THE GO DADDY GROUP, INC., an         )
26  Arizona corporation, and DOES 1 through  )   **JURY TRIAL DEMANDED**
    100, Inclusive,                      )
27                                       )
                          Defendants.    )
28  _____ )

1

Plaintiff Kenneth Martin Gardner alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief are based upon, among other things, his investigation, which included without limitation: (a) direct experience during employment at Go Daddy; (b) review and analysis of events and actions perpetrated against Plaintiff during said employment; (c) review and analysis of events and actions reported in the public press regarding Bob Parsons, CEO of defendant company; (d) review of other publicly available information regarding Go Daddy.  Plaintiff believes that further substantial evidentiary support will exist for the allegations herein after a reasonable opportunity for discovery.  Many of the facts supporting the allegations contained herein are known only to Go Daddy or are within its control.

## SUMMARY OF CLAIMS

1.      This is a civil complaint against Go Daddy for Harassment and Discrimination.
        Plaintiff brings this action on behalf of himself solely.

## THE PARTIES

2.      Plaintiff Kenneth Martin Gardner is an individual formerly employed by
        GoDaddy.com, LLC, a subsidiary wholly owned and operated by The Go Daddy
        Group Inc, and related to a company mentioned on the GoDaddy.com web site as the
        "Go Daddy Operating Company, LLC," all aforementioned collectively herein
        referred to as "**Go Daddy**."  Plaintiff's employment with Go Daddy was terminated
        following the incidents in question. Plaintiff brings this action individually, although
        evidence shows that more than 10,000,000 individual customers and thousands of Go
        Daddy employees were harmed.

3.  Defendant Go Daddy is a corporation organized under the laws of the State of Arizona, with its principal place of business in Scottsdale, Arizona. It operates within the district of Arizona as The Go Daddy Group, Inc. Go Daddy is, and was at all times herein mentioned, qualified to do business in Arizona.  Go Daddy provides Internet domain names and electronic commerce products to individuals and businesses throughout the United States and the World.  Purchasers of such Internet business services presumptively include citizens of several states in the United States.

4.  The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants named herein as DOES 1 through 100, and each of them, are unknown to Plaintiff, who therefore sues said defendants by such fictitious names.

5.  Plaintiff will ask leave to amend this Complaint to state said Defendant's true identities and capacities when the same have been ascertained.

6.  Each of the Defendants designated herein as DOE took part in and participated with Go Daddy in all matters referred to herein and was in some manner responsible for the injuries and losses suffered by Plaintiff.

7.  At all times herein mentioned, each of the Defendants was the agent, servant, and/or employee or occupied other relationships with each of the other named defendants and at all times herein mentioned acted within the course and scope of said agency and/or employment and/or other relationship and each other Defendant ratified, consented to, and approved of the acts of his agents, employees, and representatives, and each actively participated in, aided and abetted, or assisted one another in the commission of the wrongdoings alleged in this Complaint.

**JURISDICTION AND VENUE**

8.  This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 (a)(1) in that the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs, and the Plaintiff is a citizen of a state different from both the Defendant's state of incorporation and national headquarters.

9.  Venue is proper in the District of Arizona pursuant to 28 U.S.C § 1391 (a) in that (1) Go Daddy operates in this judicial district, (2) the substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district and (3) Go Daddy is subject to personal jurisdiction in the District of Arizona.

**CLASS ACTION CONSIDERATION AND STATUS**

10. To date, no entities are known by Plaintiff to have initiated class-action litigation against Go Daddy regarding the incidents relating to Plaintiff's allegations.  Plaintiff does not intend to bring class action in this case, nor does Plaintiff intend to join any subsequent class action that my be brought by any entities now or in the future. Plaintiff hereby effectively opts out of any unknown pending or unforeseeable class action relating to this matter.

**SUBSTANTIVE ALLEGATIONS COMMON TO ALL COUNTS**

**1. Go Daddy**

11. Plaintiff alleges the following on information and belief:

12. Go Daddy's Internet services business is one of the most widely used Internet and Domain Name services in the United States and the World.  Go Daddy claims on its web site to have more than 10 Million customers worldwide.

13. Go Daddy hires and employs entry-level telephone technicians to take calls from customers regarding service issues.

14. Go Daddy systematically trains and promotes entry-level technicians to higher positions requiring greater skill within an internal hierarchy of technicians, referred to as "Advanced" teams.

15. Go Daddy requires technicians to complete continuing education courses and qualify for advancement to higher positions within certain pre-defined timeframes. Go Daddy attaches pre-defined sales quota requirements to each technical support position; wherein, technicians must offer and complete the sale of company products during technical support calls or face disciplinary action.

2. **Unlawful conflict of interest: Advancement requirements v. disciplinary action**

16. Go Daddy first hires technicians into an entry-level position formally titled "Inbound Technical Sales and Support Representative." The requirements and expectations of the position are inherently contradictory in that employees are expected to handle telephone calls from customers who are experiencing a technical issue with a Go Daddy product. Go Daddy claims to have more than 40 Internet-related products:

   (a) During said calls, technical support employees are required to ascertain whether the technical problem is the fault of the customer's action or due to an internal system error with Go Daddy equipment.

   (b) Regardless of the determination of fault, technical support employees are expected to offer a "solution" in the form of a similar or higher-cost Go Daddy product in the effort to resolve the customer's issue. This sales technique is commonly referred to as "Up Selling." Up selling is required by Go Daddy as a condition of

1     continued employment and bonus compensation for each technical support

2     employee.

3    17.    Go Daddy Internet hosting servers are often overloaded, slow, offline, or broken down

4     completely, resulting in huge outages of service and the forcing offline of several

5     million customer web sites. These technical "blackouts" cause huge influxes of angry

6     calls from customers, during which times supervisors of telephone technical support

7     teams at Go Daddy encourage employees to up sell customers to much more

8     expensive products and hosting server products, whether up selling is necessary or not.

9    18.    Amidst said high call volume periods caused by Go Daddy's internally produced

10     technical problems, groups of supervisors frequently leave the floor unattended for

11     crisis management meetings. This vacuum of management leaves employees to fend

12     for themselves with angry customers. Plaintiff was written-up after one such incident.

13    19.    Go Daddy enforces disciplinary action through a standard series of escalating written

14     warnings.  Written warnings are issued for not routing calls properly to supervisors

15     when necessary, whether supervisors are actually available or not.

16    20.    Employees are prevented from advancing to higher internal positions if they have

17     written warnings in their employee record at the time of consideration.  Supervisors at

18     Go Daddy are selective and discriminatory in their process of writing up employees

19     during times of advancement hiring. Plaintiff was denied promotion in this manner.

## Hostile Work Environment

20    21.    Go Daddy CEO Bob Parsons shot and killed an elephant and posted the video of

21     African villagers violently dismembering the carcass of the elephant to a Go Daddy

22     company web site. The video attained large notoriety on the Internet, a process

commonly known as "going viral." The act of killing the elephant and its graphic display worldwide upset and enraged a high percentage of the 10 million Go Daddy customers. This public relations problem generated a very high volume of complaint calls to the technical support telephone line of Go Daddy. Go Daddy issued a formal memo to the technical support employees instructing them to refer the customers to the public relations department of the company, without giving these employees the ability to transfer the calls. Go Daddy employees are threatened with termination of employment if they ever hang up on a customer. The "elephant calls" were disruptive and damaging to the technicians' normal call flow and requirements, resulting in many disciplinary write-ups of technical support representatives for non-product issues.

22. Go Daddy management published its formal support of the controversial SOPA legislation, the Stop Online Piracy Act. A majority with business interests in the Internet are opposed to SOPA. Go Daddy's support of SOPA caused a huge public backlash worldwide, including an organized, "Dump Go Daddy Day." The SOPA backlash generated a high volume of angry calls to the technical support and sales telephone line at Go Daddy. Employees were expected to handle each call as a normal technical support and up-selling opportunity. Most calls during this period were for cancellation of service; namely from Go Daddy's pornography web site operators.

23. Go Daddy creates notoriously sexist advertising. Go Daddy strives to increase the sexist nature and spirit of its advertising continuously in an effort to generate attention, controversy, and new business. This increased notoriety also increases hostility toward the company, expressed routinely by callers to the technical support and sales line. Technicians are not trained on how to handle complaints of sexual and gender bias,

and they are threatened with disciplinary action if they do comment on such issues; yet employees are constantly questioned by customers about the Go Daddy Girl.

24.     A pervasive street gang mentality and operating style is employed and encouraged on the Go Daddy sales and support call center floor.  Several instant message boards are employed concurrently across all levels of employment and each individual department. Informal and disparaging comments are encouraged in many levels of open chat rooms, while employees are routinely written up for comments deemed inappropriate in open chat rooms of other departments with different and anonymous personnel.  All chat rooms are equally accessible and can be open or opened during high-volume call work at each employee's workstation. These electronic chat rooms are referred to collectively as "The MOC." Plaintiff received a formal disciplinary write-up for using an abbreviated word in a MOC outside his department.  This write-up, which referenced the use of the Plaintiff's chosen language, prevented the promotion of the Plaintiff to a higher position within the company. The language which the Plaintiff used was commonly used and accepted in other MOCs, including the Plaintiff's team MOC, supervised by Ms. Jeanielle Hicks.

**Go Daddy's Failure to Disclose Employee Stock Option and Corporate Buyout**

25.     Go Daddy does not disclose or offer its employee stock option plan fairly and equitably to all employees.  Rumors constantly circulate on the floor about which employees currently have access to the plan.  This creates a hostile environment of suspicion among employees.  Internet sources indicate that at least one member company of Go Daddy has a guaranteed stock option ownership plan for employees who choose to participate.

26.     Go Daddy concealed its plan to sell to and be acquired by another company. Rumors circulated constantly about said acquisition and its potential effect upon employees at Go Daddy.  In 2011, Go Daddy employees first officially learned about the purchase of their company through public media outlets external to Go Daddy. Many employees viewed this as a violation of their trust and a threat to their employment. This caused a great amount of doubt and hostility among employees at Go Daddy. The general consensus among employees held that without knowing about the stock option plan and whether or not the company stock was going to begin trading publicly, employees were being kept in the dark about and cheated out of a large amount of financial compensation. Plaintiff suffered anxiety and mental anguish over this issue.

27.     A pervasive environment of age and sex discrimination is promoted at Go Daddy. In addition to the sexist advertising, a mentality of "young women first" and "old men last" permeates the actions of management and their disciplinary and promotion decisions. Plaintiff is in a protected class of a male greater than age 40 years.

28.     Go Daddy's company dating policy encourages young male and female couples to openly engage in displays of affection during work hours and job duty performance. This leads to groups of dating couples sitting together and forming factions and gangs, who then influence preferences, disciplinary, and promotional considerations of managers through sexual politics and social pressure. Plaintiff did not date employees.

29.     Male supervisors allow young, attractive females to stand around their desks for extended periods of time away from their telephone stations during normal operating hours. This leads to higher wait times and more support duty pressure on other technical support reps. The young females who spend the most time around their

supervisor's desk are more frequently promoted to advanced positions than other
employees on the support team. Plaintiff observed this process on an open floor.

30.   John Mason, a supervisor of the Plaintiff's support team, routinely referred to older
males as "old" in a derogatory tone. He carried an audio recording of Charlie Sheen on
his iPhone and routinely played sound clips of Mr. Sheen when he wanted to mock
older male members of his team.  Mr. Mason held weekly team meetings. During his
first weekly meeting with the Plaintiff's team, he asked each member to introduce
herself or himself and share an interest or hobby. When it was Mr. Mason's turn to tell
his interest, he informed the group that he had a passion for motion pictures, and then
asked each team member in turn what their most recent movie viewing was. Upon the
Plaintiff's turn, the Plaintiff mentioned Wall Street, which had been released as a
remake within the last year and at the time of the said incident, was recently released
on DVD. To which, Mr. Mason replied:

*"Well, that is nice, but have you seen the new one?"*

31.   Plaintiff believes that Mr. Mason was referring to the fact that the original movie,
Wall Street, was released nearly twenty years prior. Plaintiff believes that Mr.
Mason's prejudice and discrimination of older people is so deep-seeded and ingrained
within his mentality that Mr. Mason assumed and perceived that Plaintiff no longer
socialized or enjoyed modern culture, such as viewing new movies.

32.   Plaintiff suffered great mental anguish and humiliation during and after this incident in
front of his co-workers.

33.   Plaintiff's prior supervisor of the same team, Jeanielle Hicks, retaliated in response to
Plaintiff's complaints to Ms. Hick's direct supervisor, Ernie Hawkins. Plaintiff had

complained in an email about Ms. Hick's arriving late to work on several occasions.

Plaintiff had complained in the same email about the public displays of affection by

team members during work time. Plaintiff had also complained about the gang-style

language and behavior that was being promoted in the chat MOC and in sales contests

organized by Ms Hicks. Following is an actual transcript excerpt of a MOC chat

occurring during Ms. Hick's supervision of live tech support calls:

"*10:50 AM Nathan Mudick: tiff dont need child support, shes a G
straight G*

*10:51 AM Tiffany L Bravo: lol
true dat*

*10:51 AM Jeanielle Hicks: word*

*10:51 AM Mary K. Tharp: Lucky Girl and a Lucky G*

*10:51 AM Nathan Mudick: word up
yea shes lucky cuz this guy hehe jk*

*10:52 AM Mary K. Tharp: That's what I was saying...*

*10:52 AM Nathan Mudick: word thanks mary*

*10:52 AM Jeanielle Hicks: why guy*

*10:52 AM Mary K. Tharp: np*

*10:52 AM Nathan Mudick: why guy?.*

*10:52 AM Jeanielle Hicks what guy?*

*10:52 AM Nathan Mudick lol*

*10:52 AM Jeanielle Hicks lol*

*10:52 AM Nathan Mudick: umm*

*10:52 AM Mary K. Tharp: WiFi?*

*10:52 AM Jeanielle Hicks: lol*

*oh the nice guy who gave her that necklace*

*10:53 AMNathan Mudick: yace yace*
*hehee*

*10:53 AM Jeanielle Hicks: yeah I heard he was prettty coo*

*10:53 AM Nathan Mudick: coo hehe fo sho*

*10:53 AM Jeanielle Hicks: coo coo*

*10:53 AM Mary K. Tharp: hahahaha... good one.*"

34.     Following the admission of the dating status by Nathan Mudick and Tiffany Bravo in the afforementioned MOC, Jeanielle Hicks began to give preferential treatment to the couple.  All three individuals began arriving late to work with no disciplinary action following. This preferential treatment resulted in hostility among team members.

35.     Physical violence is encouraged at Go Daddy. On one occasion, an employee removed the chair from underneath a floor supervisor as he was sitting. This action resulted in the supervisor, Andrew Pristo, requiring several knee surgeries and rehabilitation for many weeks.  No disciplinary action was taken against the offending employee.

36.     Andrew Pristo walked around the floor in a knee brace and crutches for several weeks, recounting the episode which led to his injury in a joking manner.  When questioned by other employees about any disciplinary action against his attacker, he proudly declared, "Oh no, I made sure he was not punished. I know he was only joking around." Mr. Pristo posted graphic pictures of his wounded knee on his Facebook page. Go Daddy employees were encouraged to have Facebook pages as outlined in official company memos.  No criminal or civil charges were filed against the assaulting employee. This created fear in the Plaintiff that a similar attack may occur to him. Rick Mesa, another supervisor, continually tapped on the back of Plaintiff's

chair during Plaintiff telephone calls for no reason. Mr. Mesa told Plaintiff, "One guy who used to work here got really upset by my doing that and threatened to sue.  Can you believe that?"  Following said conversation, other members of the Plaintiff's team began to tap the back of Plaintiff's chair each time they walked behind the seated Plaintiff. This harrassment continued to the end of Plaintiff's employment.

37.   Following the email from Plaintiff to Ernie Hawkins, the direct supervisor of Jeanielle Hicks, Ms. Hicks declared from her desk at the head of her team cubicles, "Ken (Plaintiff) is not going to get bonus this month." The performance metrics which determine bonus pay for Plaintiff began to drop numerically below standard, following an abrupt and noticeable drop in the quality of calls being routed to Plaintiff. Ms. Hicks was promoted and replaced by the aforementioned Mr. Mason a few days later. When Plaintiff complained to Mr. Mason about the negative change in quality of incoming calls, the Plaintiff's damaged bonus status, and the Plaintiff's suspicion that Ms. Hicks had retaliated by creating said situation, Mr. Mason replied, "That's how this company rolls.  If you have a problem with your supervisor, especially me, we'll go in a room and do whatever it takes to work it out, if we have to yell and scream at each other, whatever, before I'll let you go to my supervisor." This conversation was witnessed by employee Brandon Boyd and Greg Keese.

38.   Go Daddy employs a telephone prompt routing system for customer-generated telephone calls whereby customers can choose by pushing certain telephone buttons which action they wish to take, i.e. simple purchase without tech support, type of product requiring tech support, etc. Customers can dial one number, 480 505 8877, for sales and technical support.

39.     Go Daddy employs a type of "smart sense" technology whereby calls can be routed or grouped into "queues" according to customers' telephone button choices.  Supervisors have the ability to route calls or place tech support reps, such as the Plaintiff, into certain queues. Within the queue selections, there are known to be "bad" queues and "good" queues, depending on the concentration of sales opportunity calls that each queue contains at any given moment. Plaintiff believes that Ms. Hicks and other members of Go Daddy placed him in a "bad" queue for an extended period of time in retaliation for his reporting of Ms. Hicks to her immediate supervisor, and subsequently Human Resources.

## FACTUAL BACKGROUND

On or around March 29, 2010, Kenneth Martin Gardner was offered employment with Go Daddy as an Inbound Technical Sales and Support Representative.  Kenneth Martin Gardner successfully passed all required tests for employment and technical duties of the job requirements. On or around April 29, 2011, Kenneth Martin Gardner was unable to continue his employment with Go Daddy as a result of the severe and pervasive harassment and discrimination that he suffered at work.

40.     On or around April 29, 2011, Kenneth Martin Gardner's employment with Go Daddy ended. Kenneth Martin Gardner was a 46 year-old male at the time.

## FIRST CAUSE OF ACTION

## (HARASSMENT)

41.     Plaintiff repeats and re-alleges each of the preceding paragraphs, as if set forth fully herein.

42.     Go Daddy created, encouraged, and perpetuated a hostile work environment, including sexual harassment, physical harassment, verbal harassment, political incorrectness in the public company image and actions, and managerial retaliation for whistle blowing.

43.   Further, Go Daddy upheld bonus performance metrics at natural odds to situations created by the misdeeds of the company management.  In plain words, Go Daddy made customers angry and impossible to please, let alone sell to or resolve issues for.

44.   Go Daddy subjects its employees to standards of behavior and a work environment that would not be tolerated on a public street, let alone in a professional workplace.

45.   Go Daddy CEO Bob Parsons is cruel to animals, abuses women, and mistreats employees.  His company management follows his lead and example; and the Plaintiff was subjected to the full brunt of this mistreatment.

## SECOND CAUSE OF ACTION

### (DISCRIMINATION)

46.   Plaintiff repeats and re-alleges each of the preceding paragraphs, as if set forth fully herein.

47.   Go Daddy, by promoting sexist ideals, in effect creates an environment whereby anyone who is the opposite of the Go Daddy Girl featured in its advertising, i.e. young, female, or sexually attractive, is not considered seriously for promotion.

48.   Go Daddy management manufactures scenarios for employees where disciplinarian actions that prevent promotion are impossible to avoid, and then Go Daddy "writes up" employees for said unavoidable situations.

49.   As a proximate result of Go Daddy's breach of their duties owed to Plaintiff, Plaintiff has been damaged in an amount to be determined at trial but in excess of an aggregated amount of $10,000,000.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Kenneth Martin Gardner prays for judgment against Go Daddy as follows:

    i.     Allowing this action to be brought individually as no pending class action has been brought.

    ii.    Awarding Plaintiff damages for Go Daddy's harassment in an amount to be determined at trial but not less than an aggregate amount in excess of $10,000,000;

    iii.   Awarding Plaintiff damages for Go Daddy's discrimination in an amount to be determined at trial but not less than an aggregate amount in excess of $10,000,000;

    iv.   Awarding Plaintiff injunctive relief and restitution for Go Daddy's violation of the Plaintiff's civil rights;

    v.    Awarding Plaintiff pre- and post-judgment interest as allowed by law;

    vi.   Awarding Plaintiff reasonable court fees and costs;

    vii.  Awarding Plaintiff declaratory and injunctive relief requiring Go Daddy to disclose the true extent of its unlawful practices regarding employee stock options.

    viii.  Granting such other and further relief that this court may deem just and proper.

Dated: April 19, 2012                         KENNETH MARTIN GARDNER

By: _____

                                   Kenneth M. Gardner
                                   Plaintiff Pro Se